UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YARET MORALES, as next friend of ESTELA LOREDO MORALES, the real party in interest,<br><br>  Plaintiff,<br><br>vs.<br><br>PALOMAR HEALTH; BRUCE FRIEDBERG; CEP AMERICA LLC; KELLY PRETORIOUS; RADY CHILDREN'S HOSPITAL AND HEALTH CENTER; WENDY HUNTER; and CHILDREN'S SPECIALISTS OF SAN DIEGO, a Medical Group, Inc.,<br><br>  Defendants. | CASE NO. 14cv0164-GPC(MDD)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART RCHSD'S MOTION TO DISMISS**<br><br>**(ECF NO. 28)** |

## I. INTRODUCTION

Before the Court is defendant Rady Children's Hospital San Diego's ("RCHSD") Motion to Dismiss Plaintiff's First Amended Complaint, (ECF No. 24, "FAC"). (ECF No. 28, "Motion to Dismiss.") Plaintiff filed an opposition to the Motion to Dismiss, (ECF No. 40), and RCHSD filed a reply, (ECF No. 44). Based on a review of the briefs, supporting documentation, and the applicable law, the Court **GRANTS IN PART AND DENIES IN PART** RCHSD's Motion to Dismiss.

/ / /

## II.  BACKGROUND

Plaintiff alleges she developed meningococcal bacteremia on or about February 16, 2013, after having contracted a meningococcal infection on or about February 15, 2013. (FAC ¶ 11.) Plaintiff alleges that, on February 17, 2013, she was examined by a nurse practitioner in the RCHSD emergency department. (FAC ¶ 29.) Plaintiff alleges that, during this visit, RCHSD staff learned Plaintiff had a temperature of 105°F in the previous three days; she had been febrile for three days; she had vomited five times that day; she was listless; Plaintiff's parents were sufficiently concerned about her condition that they had already taken her to health care providers twice in the previous 24 hours; and her respiratory rate was 44/minute. (Id.) Plaintiff alleges these symptoms, signs, and history were indicative of a potentially emergent medical condition, and a screening examination that would have demonstrated the presence or absence of an emergency medical condition would have included a physical examination by a physician; laboratory testing, including a complete blood count and serum chemistries; and a lumbar puncture. (FAC ¶ 30.) Plaintiff alleges RCHSD's emergency department had the capabilities to perform these procedures. (Id.) Plaintiff alleges RCHSD did not have her examined by a physician, perform laboratory testing, or perform a lumbar puncture at this visit. (FAC ¶ 31.)

Plaintiff alleges she had no medical insurance when she was seen on February 17, 2013. (FAC ¶ 33.) Plaintiff alleges RCHSD failed to provide her with a minimally adequate medical screening examination to determine whether she had an emergent medical condition based on her presenting signs, symptoms, and history in the same manner as the hospital provides other patients with the same or similar signs and symptoms who are insured. (Id.)

Plaintiff alleges that, on February 19, 2013, she was again admitted to RCHSD and was diagnosed with meningococcal bacteremia and meningitis. (FAC ¶ 14.) Plaintiff alleges that, prior to developing meningococcal bacteremia and meningitis, she was a normal one-year-old and was walking and speaking with an age-appropriate

1  vocabulary.  (Id.)  Plaintiff alleges that, when she was discharged from RCHSD, she
2  was deaf, not walking, and not speaking.  (Id.)
3       Based on the foregoing, Plaintiff alleges two causes of action against RCHSD:
4  (1) violation of the Emergency Medical Treatment and Active Labor Act
5  ("EMTALA"), 42 U.S.C. § 1395dd(a); and (2) medical negligence.  RCHSD now
6  moves to dismiss both causes of action.  Defendants Kelly Pretorius (erroneously sued
7  as "Kelly Pretorious") and Children's Specialists of San Diego, A Medical Group, Inc.
8  join RCHSD's Motion to Dismiss.  (ECF No. 37.)

### III.  LEGAL STANDARD

10       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the
11  sufficiency of a complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).
12  Dismissal is warranted under Rule12(b)(6) where the complaint lacks a cognizable
13  legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.
14  1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule12(b)(6) authorizes
15  a court to dismiss a claim on the basis of a dispositive issue of law.").  Alternatively,
16  a complaint may be dismissed where it presents a cognizable legal theory yet fails to
17  plead essential facts under that theory.  Robertson, 749 F.2d at 534.
18       While a plaintiff need not give "detailed factual allegations," a plaintiff must
19  plead sufficient facts that, if true, "raise a right to relief above the speculative level."
20  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).  "To survive a motion to
21  dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state
22  a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678
23  (2009) (quoting Twombly, 550 U.S. at 547).  A claim is facially plausible when the
24  factual allegations permit "the court to draw the reasonable inference that the defendant
25  is liable for the misconduct alleged."  Id.  In other words, "the non-conclusory 'factual
26  content,' and reasonable inferences from that content, must be plausibly suggestive of
27  a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Service, 572 F.3d 962, 969
28  (9th Cir. 2009).  "Determining whether a complaint states a plausible claim for relief

1 will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Generally, on a motion to dismiss, courts limit review to the contents of the complaint and may only consider extrinsic evidence that is properly presented to the court as part of the complaint. See Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001) (court may consider documents physically attached to the complaint or documents necessarily relied on by the complaint if their authenticity is not contested). However, a court may take notice of undisputed "matters of public record" subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. Id. (citing Fed. R. Evid. 201; MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986)). Under Federal Rule of Evidence 201, a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); see also Lee, 250 F.3d at 689.

## IV. DISCUSSION

### A. Judicial Notice

RCHSD seeks judicial notice of the facts contained in the following documents: (1) Plaintiff's original Complaint, (ECF No. 1); (2) Plaintiff's Civil Cover Sheet, (ECF No. 1); and (3) Plaintiff's FAC, (ECF No. 24.) RCHSD relies on the facts alleged in the original Complaint and the Civil Cover Sheet in support of its argument that the Court has no subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§

1332. As the Court does not grant RCHSD's Motion to Dismiss Plaintiff's EMTALA claim in its entirety, the Court need not consider its subject matter jurisdiction over Plaintiff's claim based on diversity of citizenship. Further, Plaintiff's FAC, (ECF No. 24), is already before the Court in deciding RCHSD's Motion to Dismiss. Accordingly, the Court **DENIES AS MOOT** RCHSD's request for judicial notice as to the facts contained in the three foregoing documents.

**B.    Motion to Dismiss**

   **1.    EMTALA Claim**

RCHSD moves to dismiss Plaintiff's EMTALA claim on the grounds that: (1) Plaintiff's allegation of an inadequate diagnosis is insufficient to state an EMTALA claim; (2) Plaintiff's disparate treatment basis for an EMTALA claim is not factually sufficient; and (3) Plaintiff's assertion that a physician, rather than a nurse practitioner, should have screened Plaintiff is not a sufficient basis for an EMTALA claim. (ECF No. 28-1 at 10-17.)

In response, Plaintiff argues RCHSD misrepresents Plaintiff's EMTALA claim. (ECF No. 40 at 9.) Plaintiff asserts her EMTALA claim is not predicated on the factual allegations regarding misdiagnosis. (Id.) Rather, the misdiagnosis allegations are in reference to Plaintiff's medical negligence cause of action. (Id.) Plaintiff asserts she has adequately stated a separate and independent basis for an EMTALA claim by alleging she was disparately treated as an uninsured individual when she was seen in RCHSD's emergency room in that she did not receive an appropriate medical screening examination while there. (Id. at 11.) Plaintiff asserts her EMTALA claim is based on allegations that Plaintiff had acute and severe symptoms in RCHSD's emergency room, and appropriate medical screening examination would have included "a physical examination by a physician; laboratory testing, including a complete blood count and serum chemistries; and a lumbar puncture." (Id. at 8 (citing FAC ¶ 30).)

In reply, RCHSD asserts Plaintiff is required to allege that RCHSD "failed to develop a screening procedure designed to identify critical conditions" in order to state

an EMTALA claim based on inappropriate screening. (ECF No. 44 at 6.) Further, RCHSD contends Plaintiff's recitation of an "objectively reasonable screening examination" standard is unsupported by statute or case law. (Id. at 7 (quoting ECF No. 40 at 3, 4, 6).)

Under EMTALA, hospitals must provide an "appropriate medical screening" to all individuals who request care from the emergency department "to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). An "emergency medical condition" is one "manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) the placing of the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." § 1395dd(e)(1)(A). The Ninth Circuit has held that "a hospital satisfies EMTALA's 'appropriate medical screening' requirement if it provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms, unless the examination is so cursory that it is not 'designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury.'" Jackson v. E. Bay Hosp., 246 F.3d 1248, 1256 (9th Cir. 2001) (quoting Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1257 (9th Cir.1995)). Therefore, an EMTALA screening claim may be predicated on allegations of: (1) no screening; (2) disparate treatment; or (3) inappropriate screening. See id.

Plaintiff alleges two separate bases for her EMLATA claim: (1) disparate treatment; and (2) inappropriate screening. (ECF No. 40 at 5-8, 10-11.) The Court agrees with Plaintiff that RCHSD misrepresents the nature of Plaintiff's EMTALA claim. Plaintiff's EMTALA claim based on inappropriate screening is not grounded in allegations of misdiagnosis or treatment by an incorrect medical professional. As to RCHSD's argument that Plaintiff's use of an "objectively reasonable screening examination" standard is unsupported by law, the Court disagrees. Plaintiff does not

base her inappropriate screening claim on such a standard; rather, she asserts that the Ninth Circuit's interpretation of EMTALA finds that "a medical screening examination is 'appropriate' if it is designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury." (ECF No. 40 at 7 (quoting Eberhardt, 62 F.3d at 1257-58).) The Court finds Plaintiff has sufficiently alleged a violation of EMTALA based on this standard. (Id. at 8.) The Court thus proceeds to considering RCHSD's argument that Plaintiff has not stated an EMTALA claim based on disparate treatment.

The Court agrees with RCHSD that Plaintiff has failed to state an EMTALA claim based on disparate treatment. Plaintiff alleges:

> On February 17, 2013, [Plaintiff] had no medical insurance. [RCHSD] failed to provide her with a minimally adequate medical screening examination to determine whether she had an emergent medical condition based on her presenting signs, symptoms, and history in the same manner as the hospital provides other patients with the same or similar signs and symptoms who are insured.

(FAC ¶ 33.) Although Plaintiff alleges she had no medical insurance when she was seen in RCHSD's emergency department, she does not allege any facts plausibly establishing that RCHSD provided Plaintiff with screening that was different from screenings provided to other patients who are insured. The Court finds Plaintiff's conclusory allegation of disparate treatment is implausible under the Iqbal pleading standard. See Iqbal, 556 U.S. at 679.

Accordingly, the Court **GRANTS** RCHSD's Motion to Dismiss Plaintiff's EMTALA claim to the extent it is based on disparate treatment.

**2. Medical Negligence Claim**

RCHSD moves to dismiss Plaintiff's medical negligence cause of action on the ground that the Court lacks subject matter jurisdiction over this claim. (ECF No. 28-1 at 19.) RCHSD argues that, because Plaintiff cannot state an EMTALA claim, there can be no supplemental jurisdiction over Plaintiff's state-law medical negligence cause of action. (Id.)

While the Court has partly dismissed Plaintiff's EMTALA claim, Plaintiff's

1  EMTALA claim based on inappropriate screening still stands, leaving subject matter
2  jurisdiction under 28 U.S.C. § 1331 intact.  Accordingly, the Court **DENIES** RCHSD's
3  Motion to Dismiss Plaintiff's medical negligence claim.

4         **3.**    **Timeliness of Plaintiff's FAC**

5      RCHSD further moves to dismiss Plaintiff's FAC on the ground that Plaintiff
6  failed to obtain the consent of opposing parties or the Court to file an amended
7  complaint as required by Federal Rule of Civil Procedure 15(a)(1)(B).  (ECF No. 28-1
8  at 19; ECF No. 44 at 8.)  Plaintiff fails to respond to this ground for dismissal.

9      While Plaintiff's FAC was untimely, see Fed. R. Civ. P. 15(a)(1)(B), the Court
10 declines to dismiss Plaintiff's FAC on this ground.  Given the stage at which Plaintiff
11 filed her FAC and the policy of freely granting leave to amend when justice requires,
12 see Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973), the Court would
13 have freely granted Plaintiff leave to amend her initial Complaint in response to the
14 then-pending motions to dismiss.  Indeed, Plaintiff missed the twenty-one-day filing
15 deadline under Rule 15(a)(1)(B) by only four days.  Moreover, to the extent that
16 Plaintiff's filing of her FAC can be deemed a "response" to the then-pending motions
17 to dismiss, Plaintiff's FAC was timely under the Court's May 27, 2014 Order Setting
18 Briefing Schedule.  (ECF No. 19.)

19 **C.**    **Leave to Amend**

20     Finally, Plaintiff has requested leave to amend the FAC should the Court grant
21 Defendant's Motion to Dismiss the EMTALA claim.  (ECF No. 40 at 12.)  Where a
22 motion to dismiss is granted, "leave to amend should be granted 'unless the court
23 determines that the allegation of other facts consistent with the challenged pleading
24 could not possibly cure the deficiency.'"  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d
25 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co.,
26 806 F.2d 1393, 1401 (9th Cir. 1986)).  Finding Plaintiff's pleading defects curable, the
27 / / /
28 / / /

Court grants Plaintiff leave to amend the FAC to cure the deficiencies noted herein.

## V.  CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. RCHSD's Motion to Dismiss, (ECF No. 28), is **GRANTED** as to Plaintiff's EMTALA claim based on disparate treatment and **DENIED** as to Plaintiff's EMTALA claim based on inappropriate screening and as to Plaintiff's medical negligence claim;

2. The hearing on RCHSD's Motion to Dismiss, currently set for August 15, 2014, is **VACATED**; and

3. If Plaintiff wishes to file an amended complaint to cure the deficiencies noted herein, Plaintiff shall do so on or before **September 5, 2014**.[1]

DATED:  August 12, 2014

HON. GONZALO P. CURIEL
United States District Judge

---

[1] The Court has set a deadline that follows the anticipated ruling on Plaintiff's currently pending Motion for Leave to Amend, (ECF No. 38), so as to avoid the possibility of Plaintiff having to file a third amended complaint depending on the outcome of said motion.