UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YARET MORALES, as next friend of ESTELA LOREDO MORALES, the real party in interest,<br><br>Plaintiff,<br><br>v.<br><br>PALOMAR HEALTH; BRUCE FRIEDBERG; CEP AMERICA LLC; KELLY PRETORIOUS; RADY CHILDREN'S HOSPITAL AND HEALTH CENTER; WENDY HUNTER; and CHILDREN'S SPECIALISTS OF SAN DIEGO, a Medical Group, Inc.,<br><br>Defendants. | Case No.: 3:14-cv-0164-GPC-MDD<br><br>**NOTICE OF TENTATIVE RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[ECF No. 127] |

Before the Court is Defendant Rady Children's Hospital San Diego's ("RCHSD") motion for partial summary judgment as to Plaintiff's claim of "inadequate screening" under the Emergency Medical Treatment and Labor Act ("EMTALA"). ECF No. 127. The motion has been fully briefed. Plaintiff filed an opposition on September 16, 2016, ECF No. 146, and Defendant filed a reply on September 20, 2016, ECF No. 148. Also before the Court is RCHSD's motion to exclude expert testimony, ECF No. 128,

Defendants Children's Specialist of San Diego's and Kelly Pretorius' motion to exclude expert testimony, ECF No. 129, and Plaintiff's motion to exclude expert testimony, ECF No. 133. After considering the parties' submissions and arguments, and for the reasons that follow, the Court is prepared to **GRANT** Defendant's partial motion for summary judgment and to **DECLINE** to exercise pendent jurisdiction over Plaintiff's remaining state law claims.

## PROCEDURAL BACKGROUND

Plaintiff filed a complaint on January 23, 2014 against Palomar Health, the owner and operator of Palomar Medical Center ("PMC"); Bruce Friedberg, an emergency room physician at PMC; CEP America LLC, a partnership to which Friedberg belongs; Kelly Pretorius, a nurse practitioner employed by RCHSD; Wendy Hunter, a physician employed by RCHSD; Children's Specialists of San Diego, a corporation of which Hunter is a partner and shareholder; and RCHSD. ECF No. 1. Subject matter jurisdiction was predicated upon Plaintiff's first and second causes of action alleging that PMC and RCHSD violated 42 U.S.C. § 1395dd *et seq.* (EMTALA). Plaintiff's remaining causes of action alleged medical negligence against the various defendants. *Id.*

Plaintiff filed a first amended complaint on June 13, 2014. ECF No. 24. On June 25, 2014, Defendant RCHSD filed a motion to dismiss Plaintiff's FAC, arguing the Plaintiff lacked subject matter jurisdiction because it had failed to state sufficient facts to state an EMTALA violation. ECF No. 28. The Court denied in part and granted in part RCHSD's motion to dismiss. *See* ECF No. 48. It dismissed Plaintiff's EMTALA claim insofar as is relied on EMTALA's "disparate treatment" theory of liability, but allowed Plaintiff's EMTALA claim based on an "inadequate screening" theory of liability. *Id.*

Plaintiff filed a second amended complaint on September 3, 2014, adding the United States Department of Health & Human Services (HHS) as a defendant. ECF No. 57. On March 22, 2015, the Court dismissed HHS as a party with prejudice. ECF No. 101. On April 25, 2016, the Court dismissed Defendant Wendy Hunter, M.D., with prejudice. ECF No. 113. On September 9, 2016 the Court granted a joint motion to dismiss Defendants

PMC, Bruce Friedberg, M.D., and CEP America with prejudice. ECF No. 139. Thus, the only remaining defendants are RCHSD, Kelly Pretorius, and Children's Specialist of San Diego.

## LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and demonstrates entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating "there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

**1. EMTALA violation**

Under EMTALA, hospitals have a continuing duty to provide a certain level of minimum care appropriate to detect and treat emergency conditions. *See* 42 U.S.C. § 1395dd. Once an individual arrives at a hospital's emergency department seeking an examination, or treatment, for a medical condition, the hospital must: 1) "provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists" and 2) if the individual has such an emergency condition, the hospital must perform stabilizing treatment. *See id.* § 13955(a)-(b). The term "emergency medical condition" refers to a medical condition "manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) the placing of the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." *Id.* § 1395dd(e)(1)(A).

Although the statute does not define "appropriate medical screening examination," the Ninth Circuit has given meaning to the term by stating that:

> a screening is "appropriate" within the meaning of EMTALA if it . . . provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms, unless the examination is so cursory that it is not designed to identify acute and severe symptoms that

> alert the physician of the need for immediate medical attention to prevent serious bodily injury.

*Baker v. Adventist Health, Inc.*, 260 F.3d 987, 995 (9th Cir. 2001) (citations omitted) (quoting *Jackson v. East Bay Hosp.*, 246 F.3d 1248, 1256 (9th Cir. 2001)). Accordingly, a hospital may breach its duties under EMTALA by 1) treating a patient differently than other patients presenting similar issues (the "disparate treatment" theory of liability) or 2) by conducting a screening examination so lacking as to support the conclusion that it was not designed to identify acute and severe symptoms (the "inadequate screening" theory of liability). *See Jackson*, 246 F.3d at 1255; *see also Hoffman v. Tonnemacher*, 425 F. Supp. 2d 1120, 1131 (E.D. Cal. 2006). Whether or not a screening is lacking, and therefore inappropriate, depends upon whether the examination was designed to identify acute and severe symptoms that alert physicians of the need for immediate medical attention. *See Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1257 (9th Cir. 1995).

In order to demonstrate that RCHSD's screening was, as a matter of law, appropriate within the meaning of EMTALA, Defendant has provided the Court with a copy of its EMTALA Policy and an expert report opining on the sufficiency of that policy. *See* Exhibit 1, RCHSD's EMTALA Emergency Medical Treatment and Active Labor Policy, CPM 4-38, ECF No. 127-4 at 4-30; Exhibit 1, Decl. of Vincent Wang, M.D., ECF No. 127-5 at 9-10. After reviewing Defendant's treatment of Plaintiff, Dr. Wang concluded that Plaintiff did not have an emergency medical condition on February 17, 2013. *See* Exhibit 1, Decl. Wang, ECF No. 127-5 at 10 ("Since KP [Pretorius] determined that E.L.M. had no overt signs of a focal source, and did not have a physical examination consistent with meningitis (Exhibit M), the patient did not have a condition warranting further testing or intervention."). Dr. Wang also concluded, after reviewing Defendant's EMTALA policy, that RCHSD had adequately designed a medical screening procedure to identify emergency medical conditions and that its staff had followed those procedures in the course of treating Plaintiff. *Id.*

By contrast, Plaintiff has failed to present any evidence, expert or otherwise, in support of its argument that Defendant's course of treatment was insufficient within the meaning of EMTALA.  To avoid summary judgment, Plaintiff had the burden of rebutting evidence like Dr. Wang's testimony and showing that there is, in fact, a genuine dispute of material fact as to whether or not RCHSD provided an "appropriate medical screening examination."  *See Stiles v. Tenet Hosps. Ltd.*, 494 Fed. Appx. 432, 435 (5th Cir. 2012).  Plaintiff, however, has failed to produce such evidence.  None of Plaintiff's experts reviewed RCHSD's EMTALA policy, nor offered any opinion as to whether or not the policy was designed to identify emergency medical conditions.  *See, e.g.*, ECF No. 146-2 at 6.  Plaintiff's expert Dr. Mandeville spoke exclusively in terms of prudent care and the standard of care in addressing Plaintiff's February 17, 2013 visit to RCHSD.  *See* Exhibit 2, Declaration of Katherine Mandeville, M.D. at ¶¶ 19-26, ECF No. 146-2 at 18-19 ("the gold standard for assessing the severity of dehydration in young children is . . . ," "[a] reasonably careful emergency room physician inquires about previous visits . . . , "in assessing the dehydration of a young child who is vomiting everything and also has diarrhea, a reasonably careful emergency room physician reviews . . ."); *see also* Exhibit 12, Deposition of Katherine Mandeville, M.D., ECF No. 146 at 64- 71.  The same is true of Plaintiff's expert Marlene Vermeer.  *See* Exhibit 4, Declaration of Marleen Vermeer, R.N. at ¶¶ 21, 35-42, ECF No. 146-2 at 33, 35-37 ("If a fluid trial were given, it would be the standard of care . . . , " "[u]nder the ESI algorithm, the standard of care for the nurse . . . ," "the standard of care for the nurse was to inquire of the parent . . . ," "[t]herefore, it was below the standard of care for . . .").

Because Plaintiff offers no expert testimony to support its assertion that RCHSD performed an "inappropriate medical examination" and because it has not made even a single argument about why RCHSD's conduct was not designed to identify emergency medical conditions, Plaintiff has failed to raise a triable issue of fact for trial.  *See, e.g.*, *Hoffman*, 425 F. Supp. 2d at 1135 (concluding that failures to order additional tests were

"simply criticisms of violating the applicable standard of care" and did not establish an EMTALA violation). For this reason, the Court is prepared to find that the Defendant is entitled to partial summary judgment as a matter of law.

### 2. Pendent Jurisdiction

Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Yet even "once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Townsend v. Columbia Operations*, 667 F.2d 844, 850 (9th Cir. 1982) (asserting that "the district court should have dismissed the pendent state claims" given that the district court properly entered judgment as to the federal claims). In the event that all federal law claims are eliminated before trial, a district court must weigh the following factors before declining to exercise pendent jurisdiction: judicial economy, convenience, fairness, and comity. *See Bryant v. Adventist Health System/W.*, 289 F.3d 1162, 1169 (9th Cir. 2002) (quoting *Carnegie—Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. ED. 2d 720 (1988)).

Here, the Court is prepared to grant summary judgment as to the only remaining federal claim in this case, that is, Plaintiff's EMTALA claim against RCHSD. Accordingly, the Court is required to consider whether the balance of factors points towards exercising, or declining to exercise, jurisdiction over Plaintiff's remaining state law claims against RCHSD and the other defendants. The remaining claims are state

medical malpractice claims and defenses governed by California law and, as seen above, have no nexus to questions of federal policy. Thus, there is no federal interest served by proceeding with the state law causes of action in federal court and the interest of comity would be served by permitting the state court to decide issues relating to the remaining state law claims and defenses.

As to judicial economy, to date, the litigation before this Court has been focused on pre-trial challenges to Plaintiff's EMTALA claim. Three of the defendants filed motions to dismiss Plaintiff's claims based on the failure to state an EMTALA claim. *See, e.g.*, ECF No. 12, Def. PMC's Mot. to Dismiss (moving to dismiss Plaintiff's EMTALA claim); ECF No. 13-1, Defs. CEP and Friedberg's Mot. to Dismiss (arguing that the court lacked subject matter jurisdiction over Plaintiff's medical negligence claim because the EMTALA claims should be dismissed); ECF No. 18-1, Def. RCHSD's Mot. to Dismiss (arguing that subject matter jurisdiction did not exist because Plaintiff had failed to state an EMTALA claim). On August 12, 2014, the Court agreed with Defendant RCHSD insofar as it dismissed Plaintiff's "disparate treatment" theory of liability under EMTALA. *See* ECF No. 48. Given the remaining issues and the focus of this litgation, judicial economy does not weigh in favor of the Court exercising pendent jurisdiction over Plaintiff's claims.

With respect to fairness, the Court is mindful of the fact that this litigation has been proceeding in federal court for nearly 33 months. However, it is also true that a trial date has not been scheduled and the case is months away from a pretrial conference. Moreover, the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation. *United Mine Workers of Am.,* 383 U.S. at 727. The Court also notes that during the time that this litigation has been pending in federal court, there has been a history of delay in Plaintiff's prosecution of its case. Plaintiff filed her original complaint on January 23, 2014. While the summonses were issued on January 23, 2014, the Defendants did not receive their summonses until April 28, 2014. *See* ECF Nos. 7-10. Then, on August 12, 2014, the Court granted Palomar Medical

Center's motion to dismiss Plaintiff's first amended complaint because Plaintiff had failed to oppose the motion. ECF No. 49. Yet another instance of delay is evidenced by Plaintiff's failure to timely prosecute its case against one of the defendants. On January 29, 2015, the Court ordered Plaintiff to show cause why the case against HHS should not be dismissed for want of prosecution because Plaintiff had failed to serve the United States. ECF No. 76. Given these delays, it would not be unfair to decline the exercise of jurisdiction on the remaining state claims.[1] For these reasons, the Court is prepared to **DECLINE** to exercise pendent jurisdiction over Plaintiff's remaining negligence claims against Defendants Rady Children's Hospital San Diego, Kelly Pretorius, and Children's Specialist of San Diego.

## CONCLUSION

Counsel are advised that the Court's rulings are tentative, and the Court will entertain additional argument at the hearing on October 21, 2016. The parties shall have a combined total of one hour to present their arguments. The time shall be divided equally between each side, and counsel shall be responsible for keeping time and reserving time as necessary for response, rebuttal, or both.

**IT IS SO ORDERED.**

Dated: October 20, 2016

Hon. Gonzalo P. Curiel
United States District Judge

---

[1] There is no evidence before the Court on the issue of convenience and the Court finds it is a neutral factor.