UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YARET MORALES, as next friend of E.L.M., the real party in interest,<br><br>Plaintiff,<br><br>v.<br><br>PALOMAR HEALTH; BRUCE FRIEDBERG; CEP AMERICA LLC; KELLY PRETORIOUS; RADY CHILDREN'S HOSPITAL AND HEALTH CENTER; WENDY HUNTER; and CHILDREN'S SPECIALISTS OF SAN DIEGO, a Medical Group, Inc.,<br><br>Defendants. | Case No.: 3:14-cv-0164-GPC-MDD<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND EXERCISING PENDENT JURISDICTION OVER REMAINING STATE LAW CLAIMS**<br><br>**[ECF No. 127]**<br><br>**(2) DENYING DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY**<br><br>**[ECF No. 128 & 129]**<br><br>**(3) DENYING PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY**<br><br>**[ECF No. 133]** |

Before the Court is Defendant Rady Children's Hospital San Diego's ("RCHSD" or "Defendant") motion for partial summary judgment as to Plaintiff's claim of "inadequate screening" under the Emergency Medical Treatment and Labor Act ("EMTALA"). ECF No. 127. The motion has been fully briefed. Plaintiff filed an opposition on September 16, 2016, ECF No. 146, and Defendant filed a reply on September 20, 2016, ECF No. 148. Also before the Court is RCHSD's motion to exclude expert testimony, ECF No. 128, Defendants Children's Specialist of San Diego's and Kelly Pretorius'[1] motion to exclude expert testimony, ECF No. 129, and Plaintiff's motion to exclude expert testimony, ECF No. 133. On October 20, 2016, the Court issued a tentative order granting Defendant's motion for partial summary judgment and declining to exercise pendent jurisdiction over Plaintiff's remaining state law medical malpractice claim. ECF No. 154. The Court held a hearing on the following day, October 21, 2016, at which time the Court granted Defendants' request to submit supplemental briefing on the question of pendent jurisdiction. ECF No. 155. The parties have fully briefed the pendent jurisdiction issue. ECF Nos. 160, 161, 162, 164.

After considering the parties' submissions and arguments, and for the reasons that follow, the Court **GRANTS** Defendant's partial motion for summary judgment, the Court **ASSERTS** pendent jurisdiction over Plaintiff's remaining state law medical malpractice claims, and **DENIES** Defendants' motions to exclude expert testimony, ECF Nos. 128 & 129, and Plaintiff's motion to exclude expert testimony, ECF No. 133, as moot.

## PROCEDURAL BACKGROUND

Plaintiff filed a complaint on January 23, 2014 against Palomar Health, the owner and operator of Palomar Medical Center ("PMC"); Bruce Friedberg, an emergency room physician at PMC; CEP America LLC, a partnership to which Friedberg belongs; Kelly Pretorius, a nurse practitioner employed by RCHSD; Wendy Hunter, a physician

---

[1] These Defendants have no part in the motion for partial summary judgment currently before the Court. Any reference to a single Defendant refers to RCHSD.

employed by RCHSD; Children's Specialists of San Diego, a corporation of which Hunter is a partner and shareholder; and RCHSD. ECF No. 1. Subject matter jurisdiction was predicated upon Plaintiff's first and second causes of action alleging that PMC and RCHSD violated 42 U.S.C. § 1395dd *et seq.* (EMTALA). Plaintiff's remaining causes of action alleged medical negligence against the various defendants. *Id.*

Plaintiff filed a first amended complaint on June 13, 2014. ECF No. 24. On June 25, 2014, Defendant RCHSD filed a motion to dismiss Plaintiff's FAC, arguing that Plaintiff lacked subject matter jurisdiction to file in federal court because it had failed to state sufficient facts to state an EMTALA violation. ECF No. 28. The Court denied in part and granted in part RCHSD's motion to dismiss. *See* ECF No. 48. It dismissed Plaintiff's EMTALA claim insofar as is relied on EMTALA's "disparate treatment" theory of liability, but allowed Plaintiff's EMTALA claim based on an "inadequate screening" theory of liability. *Id.*

Plaintiff filed a second amended complaint on September 3, 2014, adding the United States Department of Health & Human Services (HHS) as a defendant. ECF No. 57. On March 22, 2015, the Court dismissed HHS as a party with prejudice. ECF No. 101. On April 25, 2016, the Court dismissed Defendant Wendy Hunter, M.D., with prejudice. ECF No. 113. On September 9, 2016 the Court granted a joint motion to dismiss Defendants PMC, Bruce Friedberg, M.D., and CEP America with prejudice. ECF No. 139. Thus, the only remaining defendants are RCHSD, Kelly Pretorius, and Children's Specialist of San Diego.

## FACTUAL BACKGROUND

On February 16, 2013 at 5:23 pm, E.L.M., a one year-old, arrived at RCHSD for urgent care. Pl.'s Statement in Opposition to Def.'s Undisputed Facts ("PUF") ¶ 8, ECF No. 146-2 at 2-3; *see also* Def.'s Exhibit 3, ECF No. 127-3 at 25. A physician examined E.L.M. and determined that she was well-nourished, well-developed, well-hydrated, had no acute distress, and was non-toxic. *Id.* After the consultation, the physician concluded it was possible that the child had early flu or an upper respiratory tract infection. *Id.* at

27; PUF ¶ 8, ECF No. 146-2 at 3.  The physician prescribed E.L.M. with Tamiflu and indicated that she should begin taking it as soon as possible.  PUF ¶ 10, ECF No. 146-2 at 3.[2]

On February 17, 2013, at approximately 2:37 am, E.L.M.'s father brought her to PMC's emergency department for further treatment.  *Id.* ¶ 12, ECF No. 146-2 at 3; Def.'s Exhibit 4, ECF No. 127-3 at 29.  PMC performed a urine culture and urinalysis on E.L.M., and the results came back normal.  *Id.*; PUF ¶ 14, ECF No. 146-2 at 3.  PMC took E.L.M.'s temperature and recorded that she had a fever of 100.4 degrees.  Def.'s Exhibit 4, ECF No. 127-3 at 30.  A physician examined E.L.M. and determined that she appeared non-toxic, alert, active, had a good tone, and that she was well-hydrated.  *Id.*, ECF No. 127-3 at 31; PUF ¶ 13, ECF No. 146-2 at 3.  The physician noted that there was no clinical evidence "for an obvious focus on infection, nor any signs or symptoms to suggest a serious illness, such as sepsis, pneumonia, meningitis, or urinary tract infection."  Def.'s Exhibit 4, ECF No. 127-3 at 33.  Subsequently, the attending physician determined that the patient had an acute febrile illness and sent E.L.M. home with instructions to return if her condition worsened.  *Id.*

Later that day, at approximately 7:20 pm, E.L.M.'s father again brought her to RCHSD's emergency department.  PUF ¶ 12, ECF No. 146-2 at 3; Def.'s Exhibit 4, ECF No. 127-3 at 36.  An intake triage nurse saw E.L.M. at approximately 7:25 pm.  Exhibit 4, Report of Marleen Vermeer at ¶ 18, ECF No. 146-1 at 32.  The nurse recorded that E.L.M. had been vomiting, been with diarrhea, had a fever, and that she had been fatigued.  *Id*.  Another triage nurse visited E.L.M. at approximately 8:02 pm.  *Id.* ¶ 19, ECF No. 146-1 at 32.  This nurse again reviewed the history of E.L.M.'s condition, observed her, and determined that she "had decreased activity, but was consolable, distractable [sic] and did not appear listless, was breathing normally, and her abdominal

---

[2] Plaintiff has not challenged the adequacy of treatment or screening provided by RCHSD on February 16, 2013.

evaluation was normal." *Id.* The second triage nurse administered E.L.M. 2mg of Zofran, a drug designed to prevent nausea and vomiting. *Id.*

E.L.M. was subsequently attended to by nurse practitioner Kelly Pretorius. *Id.* ¶ 19, ECF No. 146-2 at 4. Pretorius' notes indicate that she spoke with E.L.M.'s father and mother about their daughter's condition. E.L.M. had had a fever since the day before, with a maximum fever of 105 degrees. Kelly Pretorius Depo. at 34:18-25, ECF No. 127-3 at 67. E.L.M. had been vomiting and suffering from diarrhea. *See, e.g.*, *id.* at 74:6-10, ECF No. 127-3 at 80. According to her parents, she was not active, she just wanted to sleep all day, and her mother had recently been hospitalized for influenza. *Id.* at 41:8-13, ECF No. 127-3 at 71; Def.'s Exhibit 5, ECF No. 127-3 at 36. Pretorius also spoke with E.L.M.'s parents about E.L.M.'s visit to PMC earlier that morning and the fact that PMC had diagnosed E.L.M. with a virus. Def.'s Exhibit 5, ECF No. 127-3 at 37.

Pretorius subsequently performed a physical exam of E.L.M.'s entire body including her head, ears, nose, mouth, eyes, neck, chest, skin, abdomen, cardiovascular system, muscoskeletal system, and neurological system. *See* Def.'s Exhibit 5, ECF No. 127-3 at 38. She evaluated E.L.M.'s vital signs and found them to be normal. PUF ¶ 26, ECF No. 146-2 at 4. She then evaluated E.L.M. for the "etiology of fever" and determined that there was no evidence of "otitis media, sinusitis, meningitis, pneumonia, or bacterial pharyngitis." *Id.* Based on E.L.M.'s nontoxic appearance, her family history of recent hospitalization for influenza, the fact that she was well-hydrated, had recently had a urine test that came back negative, and the fact that she had exhibited normal signs with a low-grade fever, Pretorius determined that E.L.M. likely had a virus, potentially influenza. Pretorius Depo. at 40:23-41:9, ECF No. 70-71. Further, Pretorius also made a number of differential diagnoses that included, viral upper-respiratory tract infection, viral illness, appendicitis, ileus, constipation, gastroenteritis, obstruction, and pneumonia. *Id.* At the end of her examination, Pretorius prescribed E.L.M. Zofran. PUF ¶ 31, ECF No. 146-2 at 5. She recommended supportive care including fluids, antipyretics, and rest,

1  and reviewed return precautions with E.L.M.'s parents. Def.'s Exhibit 5, ECF No. 127-3
2  at 39.
3       E.L.M. returned to RCHSD's emergency department on February 19, 2013. Pl.'s
4  Exhibit 9, ECF No. 146-1 at 56. At that time, she was diagnosed with meningitis. *Id.*
5  This suit followed.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56 empowers courts to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at

325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In making this determination, the court must "view[ ] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## DISCUSSION

### 1. EMTALA Violation

Congress passed EMTALA, 42 U.S.C. § 1395dd, in response to concerns "that hospitals were dumping patients who were unable to pay for care, either by refusing to provide emergency treatment to these patients, or by transferring the patients to other hospitals before the patients' conditions stabilized." *Jackson v. East Bay Hosp.*, 246 F.3d 1248, 1254 (9th Cir. 2001). Accordingly, under EMTALA, hospitals have a continuing duty to provide a certain level of minimum care appropriate to detect, and then treat, emergency conditions. *See* 42 U.S.C. § 1395dd. Once an individual arrives at a hospital's emergency department seeking an examination or treatment for a medical condition, the hospital must: 1) "provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists" and 2) if the individual has such an emergency condition, the hospital must perform stabilizing treatment. *See id.* § 13955(a), (b). The term "emergency medical condition" refers to a medical condition "manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) the placing of the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." *Id.* § 1395dd(e)(1)(A).

> Although the statute does not define "appropriate medical screening examination," the Ninth Circuit has given meaning to the term by stating that:
>
>> a screening is "appropriate" within the meaning of EMTALA if it . . . provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms, unless the examination is so cursory that it is not designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury.

*Baker v. Adventist Health, Inc.*, 260 F.3d 987, 995 (9th Cir. 2001), *quoting Jackson*, 246 F.3d at 1256 (citations omitted). Accordingly, a hospital may breach its duties under EMTALA by 1) treating a patient differently than other patients presenting similar issues (the "disparate treatment" theory of liability) or 2) by conducting a screening examination so lacking as to support the conclusion that it was not designed to identify acute and severe symptoms (the "inadequate screening" theory of liability). *See Jackson*, 246 F.3d at 1255; *see also Hoffman v. Tonnemacher*, 425 F. Supp. 2d 1120, 1131 (E.D. Cal. 2006). Whether or not a screening is lacking, and therefore inappropriate, depends upon whether the examination was designed to identify acute and severe symptoms that alert physicians of the need for immediate medical attention. *See Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1257 (9th Cir. 1995). Here, the Court has already dismissed Plaintiff's EMTALA claim insofar as it relied on EMTALA's disparate treatment theory of liability. *See* Order on Def. RCHSD's Mot. to Dismiss (ECF No. 28). Thus, the only remaining question before the Court is whether or not Defendant's screening of E.L.M. was so cursory that it suggests the procedure was not designed to identify emergency conditions.

In order to demonstrate that RCHSD's screening was, as a matter of law, appropriate within the meaning of EMTALA, Defendant has provided the Court with a copy of its EMTALA Policy and an expert report opining on the sufficiency of that policy. *See* Exhibit 1, RCHSD's EMTALA Emergency Medical Treatment and Active Labor Policy, CPM 4-38, ECF No. 127-4 at 4-30; Exhibit 1, Decl. of Vincent Wang, M.D., ECF No. 127-5 at 9-10. After reviewing Defendant's treatment of Plaintiff, Dr.

Wang[3] concluded that Plaintiff did not have an emergency medical condition on February 17, 2013.  *See* Exhibit 1, Decl. Wang, ECF No. 127-5 at 10 ("Since KP [Pretorius] determined that E.L.M. had no overt signs of a focal source, and did not have a physical examination consistent with meningitis (Exhibit M), the patient did not have a condition warranting further testing or intervention.").  Dr. Wang also concluded, after reviewing Defendant's EMTALA policy, that RCHSD had adequately designed a medical screening procedure to identify emergency medical conditions and that its staff had followed those procedures in the course of treating Plaintiff.  *Id.*

By contrast, Plaintiff has failed to present any evidence, expert or otherwise, in support of its argument that Defendant's course of treatment was insufficient within the meaning of EMTALA.  To avoid summary judgment, Plaintiff had the burden of rebutting evidence like Dr. Wang's testimony and showing that there is, in fact, a genuine dispute of material fact as to whether or not RCHSD provided an "appropriate medical screening examination."  *See Stiles v. Tenet Hosps. Ltd.*, 494 F. App'x. 432, 435 (5th Cir. 2012).  Plaintiff, however, has failed to produce such evidence.  None of Plaintiff's experts reviewed RCHSD's EMTALA policy, nor offered any opinion as to whether or not the policy was designed to identify emergency medical conditions.  *See, e.g.*, ECF No. 146-2 at 6.  Plaintiff's expert Dr. Mandeville spoke exclusively in terms of prudent care and the standard of care in addressing Plaintiff's February 17, 2013 visit to RCHSD.  *See* Exhibit 2, Declaration of Katherine Mandeville, M.D. at ¶¶ 19-26, ECF No. 146-2 at 18-19 ("the gold standard for assessing the severity of dehydration in young children is . . . ," "[a] reasonably careful emergency room physician inquires about previous visits . . . ," "in assessing the dehydration of a young child who is vomiting everything and also has diarrhea, a reasonably careful emergency room physician reviews . . ."); *see*

---

[3] The Court is aware that the admissibility of Dr. Wang's testimony is a subject of Plaintiff's motion to exclude expert testimony.  *See* ECF No. 133 at 7.  Plaintiff's motion, however, does not object to Dr. Wang's opinions on Defendant's EMTALA policy or conformance therewith, the Court's current focus, but to his opinions regarding "the onset and course of the meningococcal infection."  *Id.*

*also* Exhibit 12, Deposition of Katherine Mandeville, M.D., ECF No. 146 at 64-71. The same is true of Plaintiff's expert Marlene Vermeer. *See* Exhibit 4, Declaration of Marleen Vermeer, R.N. at ¶¶ 21, 35-42, ECF No. 146-2 at 33, 35-37 ("If a fluid trial were given, it would be the standard of care . . . ," "[u]nder the ESI algorithm, the standard of care for the nurse . . . ," "the standard of care for the nurse was to inquire of the parent . . . ," "[t]herefore, it was below the standard of care for . . .").

Plaintiff's failure to make specific arguments about why RCHSD's course of conduct did not amount to an "appropriate medical screening examination," makes Plaintiff's EMTALA argument indistinguishable from a "standard of care" argument. This is problematic because the Ninth Circuit has made clear that EMTALA does not establish a national standard of care and it is not a federal medical malpractice cause of action. *See Bryant*, 289 F.3d at 1165. A hospital does not violate EMTALA if it misdiagnoses a patient, fails to render a diagnosis, or otherwise provides substandard medical care to a patient seeking treatment for an emergency condition. *Id.* at 1166. Rather, a hospital commits an EMTALA violation only if it conducts an examination so cursory that a court may conclude that it was not designed to identify acute and severe symptoms. Thus, while pointing to the deficiencies in RCHSD's screening may be sufficient to demonstrate that RCHSD's conduct fell below the operative standard of care, it is not sufficient, without more, to demonstrate an EMTALA violation.

The undisputed facts of this case demonstrate that the screening E.L.M. received was far from cursory. An intake triage nurse visited E.L.M. at 7:25 pm, reviewed the onset of her physical condition, and recorded her symptoms. At 8:02 pm, another triage nurse visited E.L.M. to observe her condition. That nurse provided E.L.M. with a drug for her symptoms. At 8:40 pm Pretorius saw E.L.M. Pretorius took E.L.M.'s vital signs and conducted a physical examination. She evaluated E.L.M. for the source of her fever and determined that there was no evidence of "meningitis, pneumonia, or bacterial pharyngitis." She made a variety of differential diagnoses, but ultimately concluded, based on E.L.M.'s appearance, her family history, and her hydration level, among other

facts, that the child likely had a virus, potentially influenza. Accordingly, Pretorius prescribed E.L.M. Zofran and discharged her.

Plaintiff has failed to present any evidence, let alone persuasively demonstrate, that this course of treatment was insufficient within the meaning of EMTALA. Because Plaintiff offers no expert testimony to support the assertion that RCHSD performed an "inappropriate medical examination" and because she does not bother to make even a single argument about why RCHSD's conduct was not designed to identify emergency medical conditions, Plaintiff has failed to raise a triable issue of fact for trial. *See Hoffman*, 425 F. Supp. 2d, 1133-35 (granting summary judgment for hospital-defendant on "inappropriate screening" claim because plaintiff experts' criticisms of defendant's adherence to the standard of care only amounted to criticism of defendant's "medical diagnosis and medical judgment" and did not demonstrate an examination "so cursory that it was not designed to detect emergency conditions." )); *see also Herisko v. Tenet Healthcare Sys. Desert Inc.*, 2013 WL 1517973, *4 (C.D. Cal. Apr. 11, 2013) (dismissing plaintiff's argument that he did not receive an appropriate screening due to the hospital-defendant's failure to consult a cardiologist or administer an angiogram because EMTALA does not entitle a plaintiff to demand a particular method of screening); *Torres v. Santa Rosa Memorial Hosp.*, 2013 WL 4483469, *2 (N.D. Cal. Aug. 20, 2013) (granting defendant's Rule 12(b)(6) motion because plaintiff did not provide any evidence suggesting a "cursory" screening, but only argued that the screening must have been inadequate because it failed to detect that the patient had bacterial pneumonia). Accordingly, the Court grants Defendant RCHSD's motion for partial summary judgment as to Plaintiff's EMTALA claim.

**2. Pendent Jurisdiction**

Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States

Constitution." Yet even "once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Townsend v. Columbia Operations*, 667 F.2d 844, 850 (9th Cir. 1982). In the event that all federal law claims are eliminated before trial, a district court must weigh the following factors before declining or choosing to exercise pendent jurisdiction: judicial economy, comity, convenience, and fairness. *See Bryant v. Adventist Health System/W.*, 289 F.3d 1162, 1169 (9th Cir. 2002) (quoting *Carnegie—Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. ED. 2d 720 (1988)).

Here, the Court has granted summary judgment as to the only remaining federal claim in this case, that is, Plaintiff's EMTALA claim against RCHSD. Accordingly, the Court is required to consider whether the balance of factors points towards exercising, or declining to exercise, jurisdiction over Plaintiff's remaining state law claims against RCHSD and the other defendants.

The remaining claims are state medical malpractice claims and defenses governed by California law and, as seen above, have no nexus to questions of federal policy. Thus, there is no federal interest served by proceeding with the state law causes of action in federal court, and the interest of comity would be served by permitting the state court to decide issues relating to the remaining state law claims and defenses. That said, comity does not dictate that the Court decline to exercise pendent jurisdiction in order to discourage forum shopping as the Defendants, and not Plaintiff, are the current proponents of exercising pendent jurisdiction. *See* ECF No. 160 & 161. There is also no

12

3:14-cv-0164-GPC-MDD

evidence that the state law issue involves a novel question of state law that should necessarily be decided by California courts.

As to judicial economy, this factor weighs both for and against the exercise of judicial economy. On the one hand, the litigation before this Court has been focused on pre-trial challenges to Plaintiff's EMTALA claim. Three of the defendants filed motions to dismiss Plaintiff's claims based on the failure to state an EMTALA claim. *See, e.g.*, ECF No. 12, Def. PMC's Mot. to Dismiss (moving to dismiss Plaintiff's EMTALA claim); ECF No. 13-1, Defs. CEP and Friedberg's Mot. to Dismiss (arguing that the court lacked subject matter jurisdiction over Plaintiff's medical negligence claim because the EMTALA claims should be dismissed); ECF No. 18-1, Def. RCHSD's Mot. to Dismiss (arguing that subject matter jurisdiction did not exist because Plaintiff had failed to state an EMTALA claim). On the other hand, in ruling on these motions to dismiss and on the instant motion for partial summary judgment, the Court has accumulated institutional knowledge of the facts of this case, which weighs slightly in favor of exercising supplemental jurisdiction.

Lastly, with respect to convenience and fairness to litigants, the Court finds that both of these factors weigh heavily in favor of exercising pendent jurisdiction. This litigation has been proceeding in federal court for almost three years. Discovery was extensive and has been closed for months. The parties have exchanged and filed pretrial disclosures. ECF Nos. 157, 158, 159. In other words, the case is ready for trial. To transfer the case to state court at this late hour runs the risk of causing further delay of Plaintiff's day in court and duplicating discovery or pre-trial efforts in state court. Accordingly, given that the question of whether or not to exercise pendent jurisdiction lies within the discretion of the district court, *see, e.g.*, *State of Ariz. v. Cook Paint & Varnish Co.*, 541 F.2d 226, 227 (9th Cir. 1976), the Court finds that the balance of factors, led by the interest in fairness and convenience to the litigants, weighs in favor of retaining pendent jurisdiction over the remaining state law claims.

////

**3. Motions to Exclude**

Defendant RCHSD's motion to exclude the expert testimony of Sharon Kawai, M.D., Mark Remas, and Paul Zimmer, ECF No. 128-1, is denied as moot because the Court did not rely on any of these experts' testimony in deciding the current motion. Defendants Children's Specialists of San Diego's and Kelly Pretorius' motion to exclude the expert testimony of Lee Wetzler, M.D., ECF No. 129-1, is denied as moot for the same reason. The Court also denies Plaintiff's motion to exclude the expert testimony of Mary Dyes, M.D., Bernard Danneberg, M.D., and Vincent Wang, M.D., ECF No. 133, on the same grounds. As explained *supra*, Plaintiff only objects to the part of Dr. Wang's testimony where he opines upon the onset of E.L.M.'s condition and the standard of care administered by RCHSD. Because Plaintiff's objections did not extend to Dr. Wang's opinion regarding Defendant's EMTALA policy or procedures, the Court did not need to decide Plaintiff's motion to exclude in order to rule on the instant matter. All of these motions are denied subject to being refiled by the appropriate date for motions in limine.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant RCHSD's motion for partial summary judgment, **RETAINS** jurisdiction over the remaining state law claims pursuant to the doctrine of pendent jurisdiction, and **DENIES** the pending motions to exclude expert testimony as moot.

**IT IS SO ORDERED.**

Dated: November 16, 2016

Hon. Gonzalo P. Curiel
United States District Judge